**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| DEAN J. MILLER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:05-CV-2234-M |
| | § | |
| INNOVATIVE RISK MANAGEMENT, | § | |
| d/b/a PROGRAMS PLUS, INC., | § | |
| | § | |
| Defendant. | § | |

<u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is Defendant's Motion for Summary Judgment.[1]  Having considered the motion, briefs, and supporting evidentiary submissions of all parties, and for the reasons set forth below, the Court concludes that a genuine issue of material fact exists as to Plaintiff's claims against Defendant and therefore Defendant is not entitled to summary judgment as a matter of law.  Accordingly, Defendant's Motion for Summary Judgment should be **DENIED**.

<u>Background</u>

On November 14, 2005, Plaintiff Dean J. Miller filed suit against Innovative Risk Management d/b/a Programs Plus, Inc. ("IRM"), alleging claims under the Age Discrimination in Employment Act ("ADEA").  Miller alleged IRM discriminated against him in terminating his employment on or about July 13, 2004, when Miller was 59 years old.

---

[1] Defendant's Motion to Strike Plaintiff's Summary Judgment Evidence is also before the Court. Since the Court has not relied on any of the statements to which Defendant objected in Plaintiff's Affidavit in ruling on Defendant's Motion for Summary Judgment, Defendant's Motion to Strike is **DENIED** as moot.

IRM filed its Motion for Summary Judgment on November 30, 2006, arguing that summary judgment is warranted since IRM never employed Miller.[2]  IRM argues Programs Plus, Inc. ("Programs Plus") employed Miller and that IRM has never operated as Programs Plus.

Summary Judgment Standard

Summary judgment is warranted when the facts as shown in the pleadings, affidavits, and other summary judgment evidence show that no reasonable trier of fact could find for the nonmoving party as to any material fact.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Pourgholam v. Advanced Telemarketing Corp.*, No. 3:01-CV-2764-H, 2004 WL 1283963, at *2–3 (N.D. Tex. June 9, 2004).  "The moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but is not required to negate elements of the nonmoving party's case."  *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998) (citing *Celotex*, 477 U.S. at 322–25).  Once the movant carries its initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate.  *Fields v. City of S. Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991).

The nonmovant is then required to go beyond the pleadings and designate specific facts proving that a genuine issue of material fact exists.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  That party may not rest on conclusory allegations or denials in

---

[2] IRM raises additional grounds for summary judgment in its Reply Brief.  The Court will ignore these arguments, however, since IRM waived these arguments by not including them in its original Motion.  *See Linbrugger v. Abercia*, 363 F.3d 537, 541 n.1 (finding that the party waived an argument raised for the first time in a reply brief).

its pleadings that are unsupported by specific facts. FED. R. CIV. P. 56(e). The court must review all evidence in the record, giving credence to evidence favoring the nonmovant as well as "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses," and disregarding the evidence favorable to the movant that the jury would not be required to believe. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 152 (2000). Further, "the court must draw all justifiable inferences in favor of the nonmovant." *Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 338 (5th Cir. 2005) (citing *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 956 (5th Cir. 1993)).

In determining whether genuine issues of material fact exist, "factual controversies are construed in the light most favorable to the nonmovant, but only if both parties have introduced evidence showing that a controversy exists." *Lynch*, 140 F.3d at 625. "If the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Friou v. Phillips Petroleum Co.*, 948 F.2d 972, 974 (5th Cir. 1991). However, in the absence of proof, a court will not conclude that the nonmoving party could prove the required facts. *Lynch*, 140 F.3d at 625. Further, the party opposing summary judgment must do more than simply show some "metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586.

<u>Analysis</u>

I. Liability as an "Employer" Under the ADEA

Determining whether a defendant is an "employer" under the ADEA is a two-step process. *Deal v. State Farm County Mut. Ins. Co. of Tex.*, 5 F.3d 117, 118 n.2 (5th Cir. 1993). First, "the defendant must fall within the statutory definition," and second, "there must be an

employment relationship between the plaintiff and the defendant." *Id.* IRM is moving for summary judgment because it argues that there has never been an employment relationship between it and Miller.

Miller and IRM agree that Programs Plus paid Miller's salary and that IRM and Programs Plus are two separate entities. But the Fifth Circuit has held that "superficially distinct entities may be exposed to liability upon a finding that they represent a single, integrated enterprise: a single employer." *Schweitzer v. Advanced Telemarketing Corp.*, 104 F.3d 761, 763 (5th Cir. 1997) (quoting *Trevino v. Celanese Corp.*, 701 F.2d 397, 404 (5th Cir. 1983)). "*Trevino* was the original test used in this circuit to determine if separate, related business entities could together be considered the employer of a civil rights plaintiff." *Id.* Under the four-part *Trevino* test, the Court may consider (1) interrelation of operations; (2) centralized control of labor relations; (3) common management; and (4) common ownership or financial control. *Id.* at 764. "This analysis ultimately focuses on the question whether the parent corporation [or, in this case, the affiliated entity] was a final decision-maker in connection with the employment matters under the litigation." *Lusk v. Foxmeyer Health Corp.*, 129 F.3d 773, 777 (5th Cir. 1997).

II.  Miller's Summary Judgment Evidence

In arguing that IRM and Programs Plus should be considered as a "single employer" for liability under the ADEA, Miller presents several pieces of summary judgment evidence to show how IRM and Programs Plus are related. First, Miller attaches his offer of employment, which is titled "Programs Plus Employment Proposal for Dean Miller." Plaintiff's Appendix at 1. The proposal provides that the group health insurance, disability insurance, and group life insurance will be "provided for the employee at the expense of Innovative Risk Management, Inc." *Id.*

4

Miller next attaches a copy of his business card, which identifies him as a "Senior Underwriter" for Programs Plus, but which lists his email address as "dmiller@innovative-risk.com." *Id.* at 2. Miller also attaches a "Benefit Summary" for medical benefits, which lists "INNOVATIVE RISK" as Miller's "employer." *Id.* at 3. However, a memorandum addressed to "all employees" from "Management" provides that "IRM/Programs Plus will continue to pay 100% of the premium for employees." *Id.* at 22.

Miller also includes a copy of an employee handbook, which has the Programs Plus logo on the top of the first page. *Id.* at 4–20, 23–34. Throughout the handbook, the company is identified as "Innovative Risk Management, Inc./Programs Plus, Inc." and first person plural pronouns and modifiers such as "we" and "our" are used. As way of example, the first paragraph of the handbook reads:

> Welcome to Innovative Risk Management, Inc./Programs Plus, Inc. In 1991, we started with three employees, one client, 1000 square feet, and a dream that we could identify opportunities and execute a successful plan to seize those opportunities better than the industry was doing it. With the help of a lot of good people, we're off to a great start. In a service business such as ours, our biggest asset is our people. Through quality individuals that refuse to accept mediocrity as a goal, we have achieved at the highest level of the industry.

*Id.* at 4. The company is often referred to as a single entity. *See, e.g., id.* at 1 ("In this organization, you are only limited to your own abilities."); *id.* at 8 ("Innovative Risk Management, Inc./Programs Plus is a risk management firm . . ."); *id.* at 34 ("If you are planning to resign from the company, please think twice."). The first page of the handbook, which is a welcome letter, is signed by "Stuart Stagner, President." Stuart Stagner also submitted an affidavit in this case, attached as Exhibit B to Defendant's Appendix, in which he states that he serves as president of both IRM and Programs Plus.

Miller also attaches printouts of IRM's website pages, in which Programs Plus is referred

to as IRM's "underwriting affiliate."  *Id.* at 36, 37.  Miller also avers in his affidavit that the

employees of "Innovative Risk Management/Programs Plus" work in the same facilities: a home

office in Irving, Texas; a branch office in Tyler, Texas; and a branch office in Tucson, Arizona.

Declaration of Dean Miller at 4, ¶8.


III.  Application of "Single Employer" Theory to IRM and Programs Plus

        The first factor the Court considers in applying the *Trevino* test is interrelation of

operations.  Courts have looked to different sets of factors in determining the extent that

operations of two separate companies are interrelated.  The National Labor Relations Board has

listed seven indicia of interrelatedness: (1) combined accounting records; (2) combined bank

accounts; (3) combined lines of credit; (4) combined payroll preparation; (5) combined

switchboards; (6) combined telephone numbers; and (7) combined offices.  *Tatum v. Everhart*,

954 F. Supp. 225, 228 (D. Kan. 1997).  Other courts have considered evidence that one company

"(1) was involved directly in the [other company's] daily decisions relating to production,

distribution, marketing, and advertising; (2) shared employees, services, records, and equipment

with the subsidiary; (3) commingled bank accounts, accounts receivable, inventories, and credit

lines; (4) maintained the [other company's] books; (5) issued the [other company's] paychecks; or

(6) prepared and filed the [other company's] tax returns."  *Colindres v. Quietflex Mfg.*, 235

F.R.D. 347, 363 (S.D. Tex. 2006).

        Neither party has produced evidence regarding accounting records, bank accounts, or

switchboards.  IRM has produced evidence in the form of payroll stubs that Miller was paid by

Programs Plus and checks were sent from the Tyler, Texas office.  Program Plus's reporting

forms, such as its Quarterly Federal Tax Return, were signed by Ed Davault, identified as "Vice

6

President."  There is no evidence as to whether IRM also paid payroll for other employees and, if so, from where those checks were sent or who signed IRM's reporting forms.  Therefore, there is no summary judgment evidence that the two entities had combined their preparation of payroll. There is summary judgment evidence, in the form of Miller's affidavit, Miller's business card, and website pages, that IRM and Programs Plus had combined telephone numbers, combined offices, and combined email addresses.  There is also evidence, in the form of the handbook for employees of "Innovative Risk Management, Inc./Programs Plus, Inc.," that the operations of the two entities were one and the same.  In fact, the entities refer to themselves in the singular as "the company."  Though one entity, Programs Plus, wrote Miller's payroll checks, while the other, IRM, apparently paid for his benefits, the Court finds that the operations of the two entities were sufficiently interrelated to create a genuine issue of material fact that both IRM and Programs Plus were Miller's employer for purposes of ADEA liability.

The second factor—centralized control of labor relations—has "traditionally . . . been considered the most important, such that courts have focused almost exclusively on one question: which entity made the final decisions regarding employment matters relating to the person claiming discrimination?"  *Skidmore v. Precision Printing & Packaging, Inc.*, 188 F.3d 606, 617 (5th Cir. 1999).  The affidavit of Paul Clifford, Vice President of Underwriting at Programs Plus, explains how Miller's employment was terminated:

> In July 2004, I was told by Stan [sic] Stagner, President of Programs Plus, Inc., that a reduction-in-force was necessary due to the decline in demand for the Company's services and that I must decide whom to lay off in the underwriting department.  I was the only person responsible for the ultimate termination decision to lay off Mr. Miller in the reduction-in-force.

Defendant's Appendix, Exhibit C at 1.  Stagner is also the president of IRM, which makes his reference to "the Company's services" vague since it is unclear whether he is referring to

Programs Plus as the "Company," or to "Innovative Risk Management, Inc./Programs Plus, Inc.," as the "Company," as the employee handbook does.

The handbook's treatment of IRM and Programs Plus as a single company creates a fact question that, for purposes of labor relations, the two entities are indistinguishable.  The entities concede as much when they explain that to qualify for the Family Medical Leave Act, "Innovative Risk Management, Inc./Programs Plus, Inc. must employee [sic] a minimum of fifty (50) employees within a seventy-five mile radius."  Plaintiff's Appendix at 20.  The handbook also indicates that job transfers and dismissals are considered by the two entities collectively. Plaintiff's Appendix at 25 ("Positions available at Innovative Risk Management, Inc./Programs Plus, Inc. will be posted on the staff bulletin board . . .."); *id.* at 28 ("Innovative Risk Management, Inc./Programs Plus, Inc. reserves the right to dismiss a staff member immediately if an action committed constitutes gross misconduct.").  Although it was Clifford, who, like Miller, was apparently officially an employee of Programs Plus, who made the ultimate termination decision, Miller has created a genuine issue of material fact that Clifford was acting for both Programs Plus and IRM as a "single employer" in terminating Miller's employment.

The third and fourth factors—common management, and common ownership or financial control—also indicate that there is a genuine issue of material fact that IRM and Programs Plus should be considered to be a "single employer."  Not only does Stuart Stagner serve as president of both entities, but the handbook refers employees of "Innovative Risk Management, Inc./Programs Plus, Inc." to the "office manager" for issues such as changes to their W-4s, direct deposit, and emergency contact information, indicating common management of the two entities. Plaintiff's Appendix at 14–15.   Although IRM is correct that the factors of common management and ownership alone are insufficient to establish single employer status, Miller has

8

also established a genuine issue of material fact on the first two factors.  Also, the usual rationale

that the "doctrine of limited liability creates a strong presumption that a parent corporation is not

the employer of its subsidiary's employees" is not applicable here since all the parties agree that

IRM and Programs Plus are not in a parent-subsidiary relationship, but are rather affiliated

entities.


<u>Conclusion</u>

Given the totality of the summary judgment evidence in this case, the Court finds that

Miller has created a genuine issue of material fact that IRM and Programs Plus are a "single

employer" for purposes of liability under the ADEA.  Defendant's Motion for Summary

Judgment is therefore **DENIED**.


**SO ORDERED.**

**DATED:**  March 13, 2007.


_____
BARBARA M. G. LYNN
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF TEXAS